UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number:  13-22494-CIV-MORENO**

HERITAGE SCHOONER CRUISES, INC.,

     Plaintiff,

vs.

STEVEN CANSLER and KIM CANSLER,

     Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendants' Motion for Summary Judgment. This Court finds that a careful reading of the record reveals that the Plaintiff's claims are based on assumptions and fail to provide competent evidence necessary to establish the claims Defendants seek to dismiss. There is no evidence of interference, intentional or unjustified, with any contract between Plaintiff and the Boy Scouts of America, and no dispute regarding whether the Defendants made any misrepresentations to the Boy Scouts in order to secure a contract with the organization. Plaintiff admits that it was the Boy Scouts who approached the Defendants about a contract at the termination of the at-will relationship between Plaintiff and the Boy Scouts. Plaintiff's attempts to purportedly illuminate discrepancies in witness testimony, described in its Response to this Motion, fail to establish any genuine dispute of *material* fact. Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment and DISMISSES this case.

I.    <u>Factual Background</u>

The instant matter arises from allegations by Plaintiff Heritage Schooner Cruises, Inc. ("Heritage Schooner") that Defendants Steven and Kim Cansler tortiously interfered with Heritage Schooner's business relationship with the Boy Scouts of America ("Boy Scouts"). For twenty-three years, Heritage Schooner annually contracted with the Boy Scouts to serve as the operator of the Florida National High Adventure Sea Base program. The Sea Base program operates charter vessels that are utilized by the Boy Scouts for weekly sailing expeditions in the Bahamas. Steven Cansler owned and captained a private vessel used by the Sea Base program and Heritage Schooner as a charter for the Boy Scouts' weekly sailing excursions. Up until the conclusion of the 2012 sailing season, Steven Cansler was paid by Heritage Schooner for the use of his private vessel and services as captain.

In January 2012, Heritage Schooner and the Boy Scouts entered into a written contract for the 2012 sailing season. However, Joseph Maggio, manager of Heritage Schooner's daily operations in the Bahamas, died shortly before the commencement of the 2012 season. Barbara Maggio, President of Heritage Schooner, asked Steven Cansler to temporarily handle the daily operations of the company in the Bahamas and to coordinate the sailing excursions contemplated by the 2012 contract between Heritage Schooner and the Boy Scouts.

The 2012 at-will contract between Heritage Schooner and the Boy Scouts was not renewed. Rather, the Boy Scouts contracted with Steven Cansler directly for the 2013 sailing season. Plaintiff's two-count Complaint, which asserted claims for Intentional/Negligent Interference of an Existing Business Relationship and Breach of Fiduciary Duty, was predicated on the Boy Scouts' decision to enter into a business relationship with Steven Cansler for the Sea Base excursions for the

2013 season. On October 16, 2013, this Court granted in part Defendant's Motion to Dismiss; therein, the Court held that Plaintiff failed to present facts establishing that Defendants may have breached a fiduciary duty owed to the Plaintiff and dismissed Count II. Count I is the remaining Count of the Complaint, which the Court now addresses.

II.   Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995) (*citing Celotex*, 477 U.S. at 324). The party opposing summary judgment make a sufficient showing to establish the

existence of an essential element in that party's case, on which that party will bear the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 323-24. If the nonmovant fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the nonmovant, to support a jury finding for the nonmovant, summary judgment may be granted. *Anderson,* 477 U.S. at 254-55. The burden on the nonmoving party is substantial: "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. As such, the nonmoving party "must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law." *Combs vs. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997).

III.   Legal Analysis

A.   Plaintiff fails to demonstrate genuine issue of fact as to whether the Defendants gave misrepresentations to the Boy Scouts in order to procure a contract with BSA.

There is a lack of competent record evidence demonstrating an actionable claim against the Defendants in this case for tortious interference. In order to prevail on a claim for tortious interference of a business relationship, a plaintiff must establish: (1) the existence of a business relationship under which the plaintiff has legal rights; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with that relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the business relationship. *See United Subcontractors, Inc. v. Godwin*, 2012 WL 1593173 (S.D. Fla. 2012) (*citing Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1995); *see also Seminole Tribe v. Times Publ. Co.*, 780 So. 2d 3010, 315 (Fla. 4th DCA 2001) (*citing Salit v. Ruden McClosky et al.*, 742 So. 2d

381 (Fla. 4th DCA 1999). Here, Plaintiff has failed to set forth any evidence that could support its allegation that Defendants intentionally or unjustifiably "interfered" with the relationship between Heritage Schooner and the Boy Scouts of America.

Plaintiff's claim for tortious interference is based on its claim that the Defendants undertook a scheme to "steal" the Plaintiff's contract with the Boy Scouts by making numerous misrepresentations about Heritage Schooner and Barbara Maggio to the Boy Scouts. *See* Exhibit I, Plaintiff's Complaint, ¶¶ 25-27. Plaintiff claims that the Defendants interfered with Heritage's then-existing business relationship by: (1) misrepresenting to the Boy Scouts of America that Heritage Schooner no longer wished to operate Florida National High Adventure Sea Base, (2) misrepresenting to the Boy Scouts that Heritage Schooner and Barbara Maggio agreed to turn her contract over to Defendants and simply walk away from the relationship, (3) misrepresenting to the Boy Scouts that Defendants had the support of all fleet Captains who operated the Bahamian Charter Agreement vessels, (4) misrepresenting to the Boy Scouts that they had the support of all shore side suppliers in the Bahamas, and (5) misrepresenting the Defendants' financial ability to operate the Sea Base program. When the President of Heritage Schooner, Barbara Maggio, was questioned in deposition as to the basis of these allegations, however, she offered no support for Plaintiff's allegations that the Defendants had made any misrepresentations to the Boy Scouts in order to obtain a contract for the 2013 season. S*ee* Deposition of Barbara Maggio, President of Heritage Schooner Cruises, Inc., Exhibit A, p. 64, line 16 – p. 71, line 1. Moreover, Paul Beal, General Manager of the BSA Sea Base, and Robert Kolb, the Director of the BSA Sea Base, both testified that the Defendants did not make any misrepresentations to the Boy Scouts in order to procure a contract with BSA. *See* Exhibit E, Deposition of Rob Kolb, p. 69, line 25, p. 70, lines 1-25, p. 71, lines 1-5

and Exhibit F, Deposition of Paul Beal, General Manager of the Boy Scouts, p. 14, line 5 – p. 16, line 9.

In fact, the evidence on record demonstrates that it was the Boy Scouts, through Robert Kolb, who approached the Defendants about a contract with the Boy Scouts in the event Joe Maggio was unable to continue with the program. *See* Exhibit E, Deposition of Robert Kolb, Director of Boy Scouts Sea Base Program, p. 13, lines 6-12, p. 14, lines 5-18, p. 16, lines 22-25. Defendants did not solicit a contract with the Boy Scouts; instead, they acted to accept a financial opportunity. Promoting one's financial interest is not actionable absent unlawful or improper means. *See, e.g., Perez v. Rivero*, 534 So. 2d 914, 916 (Fla. 3d DCA 1988).

B.    Plaintiff fails to offer competent evidence of an intentional and unjustified interference with its relationship with the Boy Scouts by Defendants.

In order for Plaintiff to prevail on its claim for tortious interference of a business relationship, it must establish an intentional and unjustified interference with that relationship by the Defendants. *See, e.g., United Subcontractors, Inc. v. Godwin*, 2012 WL 1593173 (S.D. Fla. 2012). In Florida, however, an action for tortious interference will almost never prevail in the context of a relationship that is at will. *Greenberg v. Mt. Sinai Medical Center*, 629 So. 2d 252 (Fla. 3d DCA 1994). This follows because when a business relationship is terminable at will, a competitor has a privilege of interference in order to acquire the business for itself. *Id.* (citing *Wackenhut Corp. v. Maimone*, 389 So. 2d 656 (Fla. 4th DCA 1980), *rev. den.*, 41 So. 2d 383 (Fla. 1981). To determine whether interference is justified requires a commonsense consideration of whether the conduct was

"sanctioned by the rules of the game" and what is "right and just" under the circumstances. *See Insurance Filed Services, Inc. v. White & White Inspection & Audit Svc., Inc.*, 384 So. 2d 303, 306 (Fla. 5th DCA 1980 (citations omitted).

Here, the relationship between Plaintiff and the Boy Scouts was based on an annual, non-renewable contract with the Boy Scouts, and if any extracontractual business relationship existed between the Boy Scouts and Plaintiff, that relationship was terminable-at-will. *See e.g.,* Deposition of Barbara Maggio, President of Heritage Schooner Cruises, Inc., Exhibit A, p. 41, lines 19-25, p. 42, lines 1-13, *see also*, Deposition of Robert Kolb, p. 62, lines 11-13, Exhibit E. The record evidence actually demonstrates that a succession plan was created by the Boy Scouts to ensure that in the event of Joe Maggio's death or inability to discharge his contractual duties, Steven Cansler would take over the charter operations for the BSA Sea Base. *See* Exhibit E, Deposition of Robert Kolb, Director of Boy Scouts Sea Base Program, p. 13, lines 6-12, p. 14, lines 5-18, p. 16, lines 22-25, p. 17, lines 6-23. This is proper: Florida law recognizes the principle that actions taken to forward one's financial interest, so long as devoid of improper means, are not actionable. *See Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1321 (11th Cir.1998). Ultimately, the Boy Scouts made Defendants an offer they couldn't refuse–and they were free to lawfully accept an offer from the Boy Scouts to conduct future business and eventually contract with the Boy Scouts. ("The Godfather", Paramount Pictures, 1997). Defendants did not solicit business from the Boy Scouts, and certainly did not do so outside as a terminable at-will relationship. There is no dispute of material fact regarding whether Defendants acted improperly in accepting the Boy Scout's offer and entering into a contractual relationship with the organization.

IV.     Conclusion

Here, the record evidence demonstrates that Defendants made no misrepresentations to the Boy Scouts in order to secure a contract, that the Defendants did not solicit a contract from the Boy Scouts, and that it was the Boy Scouts who approached the Defendants about a contract. A careful reading of the depositions of the Plaintiff's representatives reveals that the Plaintiff's claims are based on assumptions, and fail to provide competent evidence necessary to establish the claims. Because Plaintiff fails to establish any genuine dispute of *material* fact demonstrating tortious interference by Defendants, intentional or unjustified, summary judgment is appropriate. Ultimately, the fact that Plaintiff's at-will relationship with the Boy Scouts reached a natural conclusion does not create a right of action for tortious interference. Defendant's Motion for Summary Judgment is GRANTED and this case DISMISSED.

DONE AND ORDERED in Chambers at Miami, Florida, this 16 day of June, 2014.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record

-8-